UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED HEALTH SERVICES CREDIT UNION, a nonprofit Washington corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>OPEN SOLUTIONS INC., a Delaware corporation,<br><br>        Defendants. | NO.  CV-06-0302-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT** |

    On January 24, 2007, a hearing was held in the above captioned matter.  Hugh Evans and Patricia Brown were present representing Plaintiff United Health Services Credit Union ("Credit Union"), and Fred Rose, Credit Union's Chief Executive Officer, was also present. William Hyslop was present representing Defendant Open Solutions Inc. ("OSI"). Before the Court was Defendant's Motion to Dismiss Complaint or, Alternatively, to Transfer Venue (Ct. Rec. 3).  After reviewing the submitted material and relevant authority and hearing oral argument, the Court was fully informed and granted Defendant's motion.  This Order serves to supplement and memorialize the Court's oral ruling.

**BACKGROUND**

    CGI Information Systems' ("CGI") and Plaintiff Credit Union negotiated an agreement for the provision of hardware, software,

ORDER -- 1

maintenance, and support services effective October 1, 2002, for a term of 60 months (Ct. Rec. 10 p. 2). The agreement included "Terms and Conditions of System Acquisition, Terms and Conditions of Software Maintenance and Support, Terms and Conditions of Disaster Backup Service, and Proposal" (Ct. Rec. 5-2). In the spring of 2005, Fred Rose, CEO of the Credit Union, notified CGI of problems with the system and indicated that unless improvements were made, the Credit Union intended to look for a different provider for its computer and software needs (Ct. Rec. 10 p. 2).

OSI sent a letter to Credit Union dated May 11, 2005, announcing that OSI had acquired the assets of CGI and indicating its intent to continue the agreement between Credit Union and CGI (Ct. Rec. 10 Ex. 1). The letter sought Credit Union's agreement to CGI's assignment of the contract to OSI. Fred Rose replied, by letter dated May 13, 2005, that he did not agree to the assignment (Ct. Rec. 10 Ex. 2). The letter renewed Mr. Rose's request to convert to another provider and noted his unsuccessful attempt to acquire information regarding a deconversion layout. *Id.* By letter dated May 18, 2005, OSI replied that if the contract terminated, it was entitled to $55,421.49 as an early termination fee and $30,000.00 as a deconversion fee, assuming a projected deconversion date of November 1, 2005 (Ct. Rec. 10 Ex. 3). Mr. Rose alleges that Credit Union was forced to pay the amount demanded in order to have the Credit Union's member information returned (Ct. Rec. 10 p. 3). Mr. Rose further alleges that compliance with a deconversion agreement, attached as Exhibit 5 to Mr. Rose's deposition, was also required by OSI prior to deconversion (Ct. Rec. 10).

ORDER -- 2

Credit Union filed its Complaint for Damages in Washington Superior Court for the County of Spokane alleging extortion, conversion, contract interference, and consumer protection act violations on September 26, 2006 (Ct. Rec. 1). Defendant removed the case to federal court on October 31, 2006. *Id.*

Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), failure to state a claim upon which relief may be granted. Defendant argues Plaintiff's claims fail because (1) the complaint was filed outside the contractual one-year time limit, and (2) damages can only be sought under contract law, not under tort law (Ct. Rec. 4).

## STANDARD OF REVIEW

Under Rule 12(b)(6), a cause of action should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cal. Dump Truck Owners Assoc. v. Assoc. Gen. Contractors of Am.*, 562 F.2d 607, 614 (9th Cir. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). When resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether plaintiffs could prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Integrated Res. Equity Corp. v. Founders Bank of Ariz.*, 74 F.3d 1246 (9th Cir. 1996). A claim should be dismissed where there is a "lack of cognizable legal theory" or "absence of sufficient facts alleged under a cognizable

ORDER -- 3

legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the court finds that the complaint is insufficient as pled, the court should provide plaintiff with an opportunity to amend the complaint unless the pleading "could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

## ANALYSIS AND CONCLUSION

The facts of this case present two vastly different potential approaches to the issues before the Court as demonstrated by the different analyses in the parties' briefs. From Plaintiff's perspective, CGI attempted to assign the contract to OSI and Credit Union objected to the assignment. Because the contract required Credit Union's assent to the assignment, and Credit Union withheld its assent, the assignment never took place. Therefore, there was never a contract in existence between OSI and Credit Union. OSI would have known that this was a potential consequence of their acquisition of CGI had they reviewed the portion of CGI's contract with Credit Union barring assignment of the contract without consent.

From Defendant's perspective, OSI acquired the assets of CGI including contracts with CGI's clients. Pursuant to Credit Union's contract with CGI, Credit Union had the right to object to the assignment of the contract to OSI. However, the breach of the non-assignment clause did not invalidate the entire contract, rather, Credit Union had a right to seek damages for the breach of the non-assignment clause. Credit Union was limited with regard to remedies for the breach by other terms in the contract, most importantly, by the term requiring

ORDER -- 4

claims for breach to be brought within one year.

There is no dispute that a contract existed between CGI and Credit Union, the dispute turns on how to deal with CGI's attempt to assign the contract to OSI without Credit Union's consent. The resolution depends on the framing of the question: Does Credit Union's decision to withhold consent of the assignment result in a finding that no contract exists between OSI and Credit Union? Or, does the attempted assignment without consent constitute a breach of the non-assignment clause of the contract leaving the rest of the contract in place? In order to make that determination, the Court must ascertain what law applies to the facts of the case.

1. Applicable Law

Determining the applicable law is complicated by the fact that the contract at issue is a mixed contract for the provision of goods and services, and contains a choice of law provision requiring the application of Michigan law although Washington is the forum state.

In Washington, an express choice of law contract provision will be honored, "so long as application of the chosen law does not violate the fundamental public policy of the forum state." *McGill v. Hill,* 31 Wash. App. 542, 547 (1982); *See also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971). Here the Court finds no public policy reason to abrogate the parties expressed intent to apply Michigan law: "[t]his Agreement is governed by Michigan law without regard to the application of its conflicts of law principles . . ." (Ct. Rec. 10 at 9, 12, and 15.) Therefore, the Court will evaluate the dispute in light of applicable Michigan law.

ORDER -- 5

Despite the potential conflict between the Uniform Commercial Code ("UCC") as applied to contracts for the sale of goods, and common law contract principles applied to contracts for the provision of services, an examination of Michigan laws reveals that the result would be the same under either Michigan's adoption of the UCC or under general contract law. Michigan Compiled Law 440.2210, the UCC provision addressing assignment of rights, renders ineffective non-assignment clauses preventing the assignment contract rights, such as the right to receive payment. In other words, even if a contract contains a non-assignment provision, under the UCC, either party is still free to assign their right to receive payment. However, the law does not provide guidance with regard to the instant case where one party has attempted to assign a duty, rather than a right, despite a contract provision requiring the consent of both parties to ratify such an assignment. Further, no other UCC provision addresses assignment clauses generally. Therefore, whether the Court were to find the contract one for the sale of goods governed by the UCC, or a contract for services governed by the common law of contract, the Court would need to rely on general contract principles in order to evaluate the case.

2. Impact of an Attempted Assignment Without Consent

While Michigan courts have not addressed this issue directly, Michigan cases provide guidance. In *Wonsey v. Life Ins. Co. of North America,* 32 F.Supp.2d 939 (E.D. Mich. 1998), the Court cited to the Restatement (Second) of Contracts and noted that "the *modern trend* with respect to contractual prohibitions on assignments is to interpret these

ORDER -- 6

clauses narrowly . . ." 32 F.Supp.2d at 943. The Restatement directly addresses the issue at bar: "[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, . . . gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective." RESTATEMENT (SECOND) OF CONTRACTS § 322(2) (1981). Thus, the Restatement supports OSI's contention that Credit Union could have sought damages for the breach of the non-assignment clause, but the assignment itself is not rendered ineffective.

The Restatement articulates a principle that serves to facilitate commerce generally and comports with other areas of contract law. That is, breach of one clause of a contract does not invalidate the entire contract, but permits the non-breaching party to seek damages for the breach. This portion of the Restatement is qualified by the phrase, "unless a different intention is manifested." *Id.* The parties to the instant contract did not manifest a different intent. The logic of the Restatement is particularly appropriate in this case where the assets of CGI have been acquired by a company that intends to assume all of CGI's duties.[1]

Given the Court's finding that an appropriate remedy for breach of

---

[1] This holding is bolstered by *Ferndale Laboratories, Inc. v. Schwarz Pharma, Inc.*, 123 Fed.Appx. 641 (6th Cir. 2005), an unpublished opinion. In that case, Ferndale had an agreement with Reed and Carnick ("R&C") to supply a prescription cream. *Id.* The contract contained a clause similar to the instant case barring assignment without the consent of both parties. *Id.* R&C entered into an agreement whereby their assets were acquired by Schwarz Pharma, but Ferndale did not consent to the agreement. *Id.* Instead of claiming that the assignment was ineffective, Ferndale sought damages for breach of the non-assignment clause, which the Sixth Circuit granted. *Id.*

ORDER -- 7

the non-assignment clause was damages rather than voiding the assignment or the contract, the instant contract remains effective and Credit Union is bound by other terms of the contract.  Specifically, Credit Union was limited by paragraph 17 of the Terms and Conditions of Software Maintenance and Support section of the contract, which holds, "CGI Disclaims, and Credit Union waives, any . . . 4)Claims for which a legal proceeding against CGI is not filed within one year after such claim first arose."  (Ct. Rec. 5 p. 10.)  Here, Credit Union's claims for breach, either of the non-assignment clause, or any action for breach with regard to services provided and fees required, arose in May of 2005, when Credit Union received letters from OSI notifying it of CGI's assignment of the contract to OSI and requesting payment for contract termination and deconversion.  As the one year contract limitation expired in May of 2006, and this action was not filed until September of 2006, Credit Union is barred from bringing this suit.  Allegations of additional facts will not entitle Credit Union to relief.  Therefore, the Court grants OSI's motion to dismiss.

    Accordingly, **IT IS HEREBY ORDERED:** Defendant's Motion to Dismiss Complaint or, Alternatively, to Transfer Venue **(Ct. Rec. 3)** is **GRANTED.**

    **IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order, furnish copies to counsel, enter judgment in favor of Defendant, and close this file.

    **DATED** this  5th   day of February 2007.

                                                S/ Edward F. Shea
                                                 EDWARD F. SHEA
                                       UNITED STATES DISTRICT JUDGE